Christopher Marcus, P.C.
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

James H.M. Sprayregen, P.C.
Michael B. Slade (admitted *pro hac vice*)
Alexandra Schwarzman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>21st CENTURY ONCOLOGY HOLDINGS, INC., et al.,<br><br>Debtor | Chapter 11<br><br>Case No. 17-22770 (RDD)<br><br>(Jointly Administered) |
| UNITED STATES OF AMERICA EX REL. DAVID DI PIETRO,<br><br>Plaintiff,<br><br>v.<br><br>21st CENTURY ONCOLOGY HOLDINGS, INC., 21st CENTURY ONCOLOGY, INC., and 21st CENTURY ONCOLOGY, LLC.<br><br>Debtors. | Adversary Proceeding No. 17-08284 |

**DEBTORS' MOTION TO DISMISS COMPLAINT**
**TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C.**
**§§ 523(a)(2)(A) AND 1141(d)(6)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 2

    A.    The Broward-21st Century LLC Agreement and Related Media Coverage. ................................................................................................ 3

    B.    Procedural History .......................................................................... 5

LEGAL STANDARD ............................................................................................ 5

ARGUMENT ......................................................................................................... 7

I.    Count I of the Adversary Complaint Should be Dismissed in Its Entirety For Failure to State A Claim, as Section 523(a) of the Bankruptcy Code Applies Only to Individual Debtors. ........................................................................... 7

II.    Count II of the Adversary Complaint Should Be Dismissed in its Entirety As Plaintiff has not Adequately Alleged a Non-Dischargeable Debt Under § 1141(d)(6). ............................................................................................................ 7

    A.    The Debtors Do Not Owe Debt To A Governmental Unit Because Plaintiff's Allegations Were Previously Disclosed And Because Plaintiff Is Not An Original Source. ................................................................. 8

        1.    Plaintiff's allegations against the Debtors were publicly disclosed before Plaintiff filed the Florida Complaint .......................... 9

        2.    Plaintiff is not an original source ........................................... 13

    B.    Plaintiff Has Not Plead With Particularity That The Alleged Debt Was Obtained By False Pretenses, False Representations, Or Actual Fraud. ................................................................................................ 15

    C.    The Complaint Otherwise Fails to State a Claim That the Alleged Debt is Dischargeable Under § 1141(d)(6) ........................................... 21

CONCLUSION .................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Travel Related Servs. Co. v. Henein*,
  257 B.R. 702 (E.D.N.Y. 2001) ..................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................6, 19

*In re Colodner*,
  147 B.R. 90 (Bankr. S.D.N.Y. 1992).....................................................................16, 19

*Cooper v. Blue Cross & Blue Shield of Florida, Inc.*,
  19 F.3d 562 (11th Cir. 1994) ............................................................................ 10-11, 15

*CPF Premium Funding, Inc. v. Ferrarini*,
  No. 95 CIV. 4621 (CSH), 1997 WL 158361 (S.D.N.Y. Apr. 3, 1997) ...................................17

*In re Demas*,
  150 B.R. 323 (Bankr. S.D.N.Y. 1993) ......................................................................16

*In re Furio*,
  77 F.3d 622 (2d Cir. 1996).........................................................................................6

*Gundlach v. Int'l Bus. Machines Corp.*,
  No. 11-CV-846 CS, 2012 WL 1520919 (S.D.N.Y. May 1, 2012) ...........................................9

*Hirsch v. Arthur Anderson & Co.*,
  72 F.3d 1085 (2d Cir. 1995).......................................................................................7

*In re Howard*,
  No. 09-22557RDD, 2009 WL 4544392 (Bankr. S.D.N.Y. Nov. 25, 2009) .....................15, 17

*United States ex rel. JDJ & Assocs. LLP v. Natixis*,
  No. 15-CV-5427 (PKC), 2017 WL 4357797 (S.D.N.Y. Sept. 29, 2017) ............................9, 11

*In re Kanaley*,
  241 B.R. 795 (Bankr. S.D.N.Y. 1999) ....................................................................6, 19

*New York ex rel Khurana v. Spherion Corp.*,
  No. 15 CIV. 6605 (JFK), 2016 WL 6652735 (S.D.N.Y. Nov. 10, 2016).................................9

*U.S. ex rel. King v. Solvay Pharmaceuticals, Inc.*,
871 F.3d 318 (5th Cir. 2017) ...............................................................................20

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991)...................................................................................9

*U.S. ex rel. Kraxberger v. Kan. City Power & Light Co.*,
756 F.3d 1075 (8th Cir. 2014) .............................................................................14

*U.S. ex rel. Kreindler & Kreindler v. United Tech. Corp.*,
985 F.2d 1148 (2d Cir. 1993)...........................................................................9, 15

*United States ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*,
No. 95 Civ. 1363 (BSJ), 2003 WL 21998968 (S.D.N.Y. Aug. 21, 2003) ..............11

*United States ex rel. Lockey v. City of Dallas*,
No. 3:11CV354-O, 2013 WL 268371 (N.D. Tex. Jan. 23, 2013), *aff'd*, 576 F.
App'x 431 (5th Cir. 2014) ....................................................................................11

*In re MF Glob. Holdings Ltd.*,
No. 11-15059 MG, 2012 WL 734175 (Bankr. S.D.N.Y. Mar. 6, 2012)....................7

*Morton v. Mancari*,
417 U.S. 535 (1974)..............................................................................................23

*U.S. ex rel Osheroff v. Humana, Inc.*,
776 F.3d 805 (11th Cir. 2015) ............................................................... 9, 11-12, 14

*In re Overmyer*,
32 B.R. 597 (Bankr. S.D.N.Y. 1983) ...................................................................16

*Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*,
966 F. Supp. 2d 282 (S.D.N.Y. 2013)................................................... 9, 11, 14-15

*Radzanower v. Touch Ross and Co.*,
426 U.S. 148 (1976)..............................................................................................23

*In re Residential Capital, LLC*,
No. 12-12020 (MG), 2015 WL 1281960 (Bankr. S.D.N.Y. Mar. 18, 2015) ............7

*In re Sanchez*,
365 B.R. 414 (Bankr. S.D.N.Y. 2007) ...................................................................6

*U.S. ex rel. Schroeder v. CH2M Hill*,
793 F.3d 1080 (9th Cir. 2015) .............................................................................21

*In re Schulman*,
196 B.R. 688 (Bankr. S.D.N.Y. 1996) .................................................................16

*Texaco Inc. v. Sanders*,
   182 B.R. 937 (S.D.N.Y. 1995) ............................................................................6

*In re Trafalgar Assocs.*,
   53 B.R. 693 (Bankr. S.D.N.Y. 1985) ....................................................................7

*U.S. v. Bi-Co Pavers, Inc.*,
   741 F.2d 730 (5th Cir. 1984) .............................................................................18

*U.S. v. Incorporated Village of Island Park*,
   888 F. Supp. 419 (E.D.N.Y 1995) .....................................................................18

*U.S. v. Kellogg Brown & Root Services, Inc.*,
   99 Fed. Cl. 488 (2011) .......................................................................................20

*U.S. v. Shaw*,
   725 F. Supp. 896 (S.D. Miss. 1989) ..................................................................20

*U.S. v. Twentieth Century Fox Film Corp.*,
   882 F.2d 656 (2d Cir. 1989) ..............................................................................18

*U.S. ex rel. Vallejo v. Investronica, Inc.*,
   2 F. Supp. 2d 330 (W.D.N.Y. 1998) .................................................................18

*In re Wong*,
   291 B.R. 266 (Bankr. S.D.N.Y. 2003) ..............................................................16

**Statutes**

2 U.S.C. § 1601 ...........................................................................................................23

11 U.S.C. § 362(a) .........................................................................................................5

11 U.S.C. § 523(a) ............................................................................1, 4-5, 7-8, 15-16

11 U.S.C. § 1141(d) ...........................................................................................1, 5-8, 21

31 U.S.C. § 3730 ....................................................................................................8-10, 13

42 U.S.C. § 1320a-7b(b) ...............................................................................................3

Fla. Stat. Ann. § 11.045 ..............................................................................................23

**Rules**

Fed. R. Bankr. P. 7009 ..................................................................................................6

Fed. R. Bankr. P. 7012 ..................................................................................................6

Fed. R. Civ. P. 8 ...............................................................................................................17

Fed. R. Civ. P. 9(b) ................................................................................................ 6, 15-19

Fed. R. Civ. P. 12(b)(6) ..........................................................................................6, 9, 19

**Other Authorities**

42 C.F.R. § 1001.952(d) ..................................................................................... 21-22

56 Fed. Reg. 35952 (July 29, 1991) ...........................................................................21

64 Fed. Reg. 63518 (Nov. 19, 1999) ...........................................................................21

## INTRODUCTION

1.     Plaintiff filed this adversary proceeding seeking a declaration that a contingent and hypothetical debt owed by the Debtors for alleged violations of the False Claims Act is non-dischargeable because it falls within the exceptions to dischargeability under sections 523(a)(2)(A) and 1141(d)(6) of the Bankruptcy Code.   Both claims fail because Plaintiff's underlying allegations do not meet the requisite requirements for non-dischargeability under either section. As a result, this proceeding should be dismissed.

2.     *First*, Plaintiff misreads section 523(a).  That section applies only to individual debtors.  11 U.S.C. § 523(a) ("A discharge under section . . . of this title does not discharge an individual debtor from any debt . . . .").  It does not apply to the Debtors, who are corporate debtors.

3.     *Second*, Plaintiff has not pled that the debt the Debtors allegedly owe is non-dischargeable under section 1141(d)(6) because he does not adequately allege that (i) the debt is owed to a governmental unit; and (ii) the debt was obtained by false pretenses, a false representation, or actual fraud.

4.     The Debtors do not owe a debt to the Federal Government—which declined to intervene in Plaintiff's underlying case—for allegedly violating the False Claims Act.  Courts dismiss actions under that statute where, as here, they are preceded by public disclosures of the allegations or transactions at issue, and the Plaintff is not an original source.  In this case, news articles published weeks before Plaintiff's complaint raised the same issue:  whether the contract between Broward and 21st Century LLC was improperly obtained due to political influence. Plaintiff's Complaint borrows liberally from those articles, as well as from publically-available SEC filings and minutes of the Broward Board of Directors' meetings.  Nor is Plaintiff the

"original source" of the allegations:  one of the articles predating his complaint mentions the Plaintiff and describes him as "stunned" by its contents.

5.      Plaintiff's claim under section 1141 also fails for the independent reason that he has not adequately alleged fraud.  The underlying Complaint mentions the Debtors only in passing. It reads instead as if the Plaintiff has an axe to grind with several non-parties:  (1) Governor Rick Scott of Florida, who suspended Plaintiff from Broward's Board of Directors for "acts of malfeasance;" (2) lobbyist Bill Rubin, who Plaintiff characterizes as "a long-time Democrat;" or (3) Broward, from whose Board Plaintiff resigned days before filing the Complaint.  Moreover, Plaintiff's allegations regarding the alleged fraud are neither plausible nor pled with requisite particularity.  It may have "become clear" to Plaintiff that the then-CEO of Broward received a kickback in exchange for supporting the contract between Broward and 21st Century LLC, FAC ¶ 192, but it is not clear from the Complaint how that "became clear" to Plaintiff or how the alleged kickback even worked.

6.      Because Plaintiff has not pled that the Debtors owe a debt falling within either exception to the general rule that corporate debt is discharged upon reorganization, the Debtors respectfully request that the Court dismiss the Adversary Complaint.

## BACKGROUND

7.      Debtors 21st Century Oncology Holdings, Inc., 21st Century Oncology, Inc., and 21st Century Oncology, LLC (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 (the "Bankruptcy Code") in this Court on May 25, 2017.  *In re 21st Century Oncology Holdings, Inc., et al.*, No. 17-BK-22770-RDD (Dkt. 1) ("Bankruptcy Proceeding").  The Court has approved the Debtors' disclosure statement and set the confirmation hearing on their proposed joint plan for December 11, 2017.  Bankruptcy Proceeding (Dkt. 541).

8.      Plaintiff has filed a proof of unsecured claim against each Debtor for unspecified amounts purportedly arising "from the existence of fraud and kickbacks" "in procuring a contract and referrals from the North Broward Hospital District d/b/a Broward Health ("Broward") for radiation oncology services."  Claims Nos. 2502, 2503, 2504 at 4.  Plaintiff has also initiated two related proceedings:  a *qui tam* litigation in the District Court for the Southern District of Florida, *United States of America Ex Rel. David Di Pietro v. 21st Century Oncology, Inc. et al.*, No. 16-cv-60853-KMW ("Florida Litigation"), and an adversary proceeding in this Court, *United States of America ex Rel. David Di Pietro v. 21st Century Oncology Holdings, Inc., et al.*, 17-08284-RDD ("Adversary Proceeding").

9.      In each proceeding, Plaintiff alleges that 21st Century Oncology, LLC ("21st Century LLC"), a health care provider, contracted with a lobbyist, Bill Rubin, to approach Broward's then-CEO Frank Nask with a purported proposal of *political* protection in exchange for Nask's support for an agreement between Broward and 21st Century LLC, an agreement that could only be approved by Broward's Board of Directors.  FAC ¶ 71.  Rubin did not have control over the Board (the Governor did), and Nask was not a member of the Board.  *Id.* ¶ 157.  Plaintiff nevertheless claims this alleged proposal was a "kickback" within the meaning of 42 U.S.C. § 1320a-7b(b), known as the Anti-Kickback Statute ("AKS").  Therefore, according to Plaintiff, 21st Century LLC violated the False Claims Act ("FCA").

**A.      The Broward-21st Century LLC Agreement and Related Media Coverage.**

10.      Broward and 21st Century LLC negotiated and entered into a Radiation Oncology Services Agreement effective September 19, 2011, which was amended and restated in its entirety effective March 12, 2012, and further amended on October 8, 2012, June 7, 2013, May 21, 2014,

and August 28, 2014 (the "Agreement") (Ex. A).[1]  Pursuant to the Agreement, 21st Century LLC exclusively operates the Broward radiation oncology department, and bills globally for services provided.  Ex. A §§ 2.2, 5.3.1, 5.4.  For indigent patients and inpatients (for whom Broward is required to bill pursuant to government billing requirements), Broward pays 21st Century LLC a fee of 65 percent of the Medicare allowable Part B rate.  *Id.* Oct. 8, 2012 Amend. ¶ 1.  21st Century LLC also provides medical director services.  *Id.* §§ 3.2, 3.4.2.  21st Century LLC separately pays Broward an annual license fee for use of Broward's space and equipment.  *Id.* § 2.4.

11.     Plaintiff ("Plaintiff") became a member of Broward's Board of Commissioners (the "Board") on September 9, 2011 and resigned from the Board on April 14, 2016.  As a member of the Board, Plaintiff voted to approve the Agreement in February 2012.  Two news articles published in February, 2016 – "*Broward Health gave company with financial ties to Gov. Scott 25-year, no-bid contract*" (Ex. B) and "*Company tied to Gov. Scott got Broward Health contract, gave $400K to his campaign*" (Ex. C) – detail the nature and terms of the Agreement and discuss alleged financial ties between the Debtors and Governor Rick Scott, as well as Governor Scott's ability to appoint the members of the Board.[2]  The articles raise an inference that the Debtors' financial contributions and ties to Governor Scott may have led to the Debtors receiving the Agreement.  Plaintiff is described in the first of these articles as "stunned" and quoted as stating, upon learning of the Governor's indirect ownership interest in Debtors, "[t]his is news to me."  Ex.

---

[1]     Exhibits are attached to the Declaration of Michael P. Esser in Support of Debtors' Motion to Dismiss the Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 1141(d)(6).

[2]     Details of the Agreement have also been publicly disclosed in Debtors' governmental filings (Ex. D), in the Board's publicly available meeting minutes (Ex. E), and in the Agreement itself (Ex. A), which was made publicly available in February 2016.

4

17-08284-rdd    Doc 8    Filed 11/03/17    Entered 11/03/17 20:43:32    Main Document
Pg 11 of 30

B.  Plaintiff filed the Florida Litigation two months after being quoted in the article and four days

after resigning from the Board.

      **B.**    **Procedural History.**

      12.    Plaintiff filed his original complaint in the Florida Litigation ("<u>Florida Complaint</u>")

under seal and served "a copy of the complaint together with a written disclosure of substantially

all the material evidence in support of the claim on the United States Attorney for the Southern

District of Florida and the United States Attorney General."  Florida Litigation (Dkt. 35).  A year

and a half later, the United States declined to intervene in the Florida Litigation.  *Id.* (Dkt. 28).

The Florida District Court then ordered that the Florida Complaint "be unsealed and served upon

the defendant by the relator."  *Id.* (Dkt. 29 at 1).  Plaintiff did not serve Florida Complaint on

Debtors or take any other action to advance the Florida Litigation before the District Court ordered

the case stayed pursuant to 11 U.S.C. § 362(a) on October 17, 2017.  Florida Litigation (Dkt. 36).

      13.    On September 25, 2017, Plaintiff initiated this Adversary Proceeding by filing a

complaint ("<u>Adversary Complaint</u>") seeking a declaration "that Plaintiff's claims against

Defendants to recover statutory damages and civil penalties under the False Claims Act," are non-

dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 1141(d)(6).  Adversary Proceeding (Dkt.

1).  Plaintiff attached to the Adversary Complaint as Exhibit C a "First Amended Complaint" for

the Florida Litigation ("<u>FAC</u>") and incorporated its allegations by reference.  Adversary Complaint

¶ 19.  The parties agreed to extend Debtors' time to respond to the Adversary Complaint until

November 3, 2017.  Adversary Proceeding (Dkt. 7).

## LEGAL STANDARD

      14.    As a general matter confirmation of a reorganization plan discharges corporate debt

not otherwise provided for in the plan.  *See* 11 U.S.C. § 1141(d)(1) ("Except as otherwise provided

in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—(A)

discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title."). This general rule applies even where final judgment on a claim has not yet been reached. *See Texaco Inc. v. Sanders*, 182 B.R. 937, 953–54 (S.D.N.Y. 1995) (explaining that confirmation of a plan discharges debtor from any liability on claims where all physical events required to establish elements of causation and damage occurred prior to confirmation). The specific exemptions to discharge of corporate debt, including section 1141(d)(6), are narrowly construed against the objecting creditor and liberally in favor of the debtor. *In re Furio*, 77 F.3d 622, 624 (2d Cir. 1996); *see also In re Sanchez*, 365 B.R. 414, 417 (Bankr. S.D.N.Y. 2007) (same).

15.     Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b), which incorporates Federal Rule of Civil Procedure ("Rule") 12(b)(6), permits a bankruptcy court to dismiss an adversary proceeding if the complaint fails to state a claim upon which relief can be granted. Although in reviewing a motion to dismiss under Rule 12(b)(6) the Court accepts the factual allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007), complaints that merely assert the legal elements of dischargeability, without making the necessary factual allegations, cannot survive a motion to dismiss, *see Am. Express Travel Related Servs. Co. v. Henein*, 257 B.R. 702, 707 (E.D.N.Y. 2001).

16.     Fraud allegations in non-dischargeability complaints are subject to the heightened pleading requirements of Bankruptcy Rule 7009 and Rule 9(b). *In re Kanaley*, 241 B.R. 795, 803 (Bankr. S.D.N.Y. 1999). Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To survive a motion to dismiss, a complaint alleging fraud must contain well-pleaded allegations

which must be supported by more than mere conclusory statements. *See Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).

**ARGUMENT**

**I.     COUNT I OF THE ADVERSARY COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY FOR FAILURE TO STATE A CLAIM, AS SECTION 523(A) OF THE BANKRUPTCY CODE APPLIES ONLY TO INDIVIDUAL DEBTORS.**

17.     Count I of Plaintiff's Adversary Complaint fails to state a claim for a determination of non-dischargeability under § 523(a) because the Debtors are corporations and LLCs, not individuals.  Section 523(a) reads in relevant part:  "A discharge under . . . this title does not discharge an ***individual debtor*** from any debt . . . ." (emphasis added).  The text of the statute clearly applies only to individual debtors, and courts in this Circuit have consistently ruled that section 523(a) means what it says.  *In re Trafalgar Assocs.*, 53 B.R. 693, 696 (Bankr. S.D.N.Y. 1985) (Movant's "reliance on section 523 as support for non-dischargeability is misplaced because that section on its face applies only to individual debtors"); *In re MF Glob. Holdings Ltd.*, No. 11-15059 MG, 2012 WL 734175, at *3 (Bankr. S.D.N.Y. Mar. 6, 2012) ("In the Second Circuit, it is well-settled that section 523 does not apply to corporate debtors."); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 1281960, at *4 (Bankr. S.D.N.Y. Mar. 18, 2015) (Section 523(a) "only pertains to individual debtors, not corporate debtors").  Plaintiff pleads—correctly—that the Debtors are not individuals.  *See* Adversary Complaint ¶¶ 7-9.  Count I of the Adversary Complaint should therefore be dismissed with prejudice.

**II.    COUNT II OF THE ADVERSARY COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY AS PLAINTIFF HAS NOT ADEQUATELY ALLEGED A NON-DISCHARGEABLE DEBT UNDER § 1141(D)(6).**

18.     Section 1141(d)(6) of the Bankruptcy Code provides in relevant part that "confirmation of a plan does not discharge a debtor that is a corporation from any debt . . . of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic

7

governmental unit . . . ."  Section 523(a)(2)(A) of the Bankruptcy Code in turn exempts from discharge debt "to the extent obtained by" "false pretenses, a false representation, or actual fraud." Plaintiff has failed to allege that debt is dischargeable under section 1141(d)(6) because he has not adequately pled either that it is owed to a governmental unit or that it was obtained by false pretenses, a false representation, or actual fraud, and the alleged debt is otherwise not dischargeable.

A.      **The Debtors Do Not Owe Debt To A Governmental Unit Because Plaintiff's Allegations Were Previously Disclosed And Because Plaintiff Is Not An Original Source.**

19.      Plaintiff's allegations were disclosed in two news articles published prior to the filing of the complaint in the Florida Litigation, and neither the Florida Complaint nor the Adversary Complaint materially add to the previously-disclosed public information.  The Florida Litigation—pursuant to which the Plaintiff attempts to benefit financially based on allegations that were already in the public realm and for which the government was on notice—is exactly the type of parasitic lawsuit that the public disclosure bar under the FCA was designed to prevent.

20.      The FCA states that a "court shall dismiss an action or claim under this section, unless opposed by the Government, if *substantially the same allegations or transactions* as alleged in the action or claim were *publicly disclosed* . . . from the *news media* . . . unless . . . the person bringing the action is an original source of the information."  31 U.S.C. § 3730(e)(4)(A)(B) (emphasis added).

21.      An "original source" is "an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) *who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions*, and who has voluntarily provided the information to the Government before filing an action under this section."  31 U.S.C.

8

§ 3730(e)(4) (emphasis added).  When the public disclosure provision of the FCA applies, the

action should be dismissed for failure to state a claim.  *See United States ex rel. JDJ & Assocs.*

*LLP v. Natixis*, No. 15-CV-5427 (PKC), 2017 WL 4357797, at \*5 (S.D.N.Y. Sept. 29, 2017).

22.     The Second Circuit applies a two-part test to determine whether dismissal is

required under the public disclosure bar:

> [a] court must first determine whether 'substantially the same allegations or
> transactions as alleged in the action or claim were publicly disclosed' through one
> of the sources listed in the statute.  If that is the case, a court must then consider
> whether the relator is an 'original source of the information' as defined in Section
> 3740(e)(4)(B).

*Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 296-97 (S.D.N.Y. 2013).

The purpose of the public disclosure bar, as articulated by this court in *Ping Chen*, is to "bar

'parasitic lawsuits' based upon publicly disclosed information in which would-be relators 'seek

remuneration although they contributed nothing to the exposure of the fraud.'"  *Ping Chen*, 966 F.

Supp. 2d at 295-96 (quoting *U.S. ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d

1148, 1157 (2d Cir. 1993)).

### 1.     Plaintiff's allegations against the Debtors were publicly disclosed before Plaintiff filed the Florida Complaint.

23.     Plaintiff's allegations were publicly disclosed in two news articles published by the

Florida Bulldog on February 22, 2016 (Ex. B) and on February 24, 2016 (Ex. C), two months

before Plaintiff filed the Florida Complaint.[3]  News media statutorily qualifies as a public

---

[3]     The Court may rely on "judicially-noticeable public disclosures" in a Rule 12(b)(6) motion to dismiss on the basis of the FCA public disclosure bar,," *Ping Chen*, 966 F. Supp. 2d at 294, and the Debtors request that the Court take judicial notice of the exhibits attached to the Esser Declaration.  *See New York ex rel Khurana v. Spherion Corp.*, No. 15 CIV 6605 (JFK), 2016 WL 6652735, at \*11 (S.D.N.Y. Nov. 10, 2016) (When deciding a motion to dismiss a claim under the FCA, courts make take "judicial notice of the fact that press coverage and judicially noticeable public records contained certain information, without regard to the truth of their contents."); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (upholding district court's grant of motion to dismiss on the basis of a judicially-noticed SEC filings); *Gundlach v. Int'l Bus. Machines Corp.*, No. 11-CV-846 CS, 2012 WL 1520919, at \*1 n.2 (S.D.N.Y. May 1, 2012) (taking judicial notice of contract mentioned in complaint).

disclosure. *See* 31 U.S.C. § 3730(e)(4)(A)(iii); *see also Ping Chen*, 966 F. Supp. 2d at 297; *U.S. ex rel Osheroff v. Humana, Inc.*, 776 F.3d 805 813 (11th Cir. 2015) (stating that "the term 'news media' has a broad sweep").

24.     Although the Florida Bulldog articles are sufficient on their own to serve as public disclosures under 31 U.S.C. § 3730(4), the allegations were also publicly disclosed prior to the filling of the Florida Complaint via other sources.  As the February 22, 2016 article states, "information about the contract is contained in publicly traded 21st Century's filings with the U.S. Securities and Exchange Commission (SEC) and the minutes of a Jan. 30, 2012 board meeting when the deal was approved in a 5-1 vote." Ex. B.  Both the SEC fillings (Ex. D) and the January 30, 2012 Board meeting minutes (Ex. A) are public records.  Finally, the Agreement itself is a public record.  As noted in the February 24, 2016 article, after publication of the February 22, 2016 article, Broward "released a copy of the 42-page contract, exhibits, and amendments." Ex. C.

25.     The publicly disclosed information is substantially the same as the allegations in the Adversary Complaint.  The titles of the articles—"*Broward Health gave company with financial ties to Go. Scott 25-year, no bid contract,*" and "*Company tied to Gov. Scott got Broward Health contract, gave $400k to his campaign*"—encapsulate the crux of Plaintiff's allegations against the Debtors:  that Broward awarded a contract to the Debtors as a result of the Debtors' alleged financial and other connections with Governor Scott.  The material information from the Adversary Complaint that is not contained in the articles is largely if not entirely contained in the January 30, 2012 Board minutes.

26.     As described persuasively by the Eleventh Circuit, the determination as to whether public disclosures are "substantially the same" as the allegations is a "quick trigger to get to the more exacting original source inquiry." *Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19

F.3d 562, 568 n.10 (11th Cir. 1994) (quoting *U.S. ex rel. Precision Co. v. Koch Ind.*, 971 F.2d 548,

552 (10th Cir. 1992)); *see also Osheroff*, 776 F.3d at 814; *United States ex rel. JDJ & Assocs.

LLP*, 2017 WL 4357797, at *10 (the "public disclosure bar does not require that every conceivable

detail about a scheme to defraud the government be publicly known before it becomes

applicable"); *Ping Chen*, 966 F. Supp. 2d at 298 (finding it sufficient if critical elements of the

fraudulent transaction were in the public domain and stating that application is appropriate where

the information conveyed could at least have alerted law enforcement authorities to the likelihood

of wrongdoing); *United States ex rel. Lockey v. City of Dallas*, No. 3:11CV354-O, 2013 WL

268371 (N.D. Tex. Jan. 23, 2013) (framing the "substantially the same" test as "whether the scope

of Relators' action is similar to the allegations or transactions that are publicly disclosed"), *aff'd*,

576 F. App'x 431 (5th Cir. 2014); *United States ex rel. Lissack v. Sakura Global Capital Mkts.,

Inc.*, No. 95 Civ. 1363 (BSJ), 2003 WL 21998968, at *10-11 (S.D.N.Y. Aug. 21, 2003) (stating

that *qui tam* actions are prohibited under the public disclosure bar "when either the allegation of

fraud or the critical elements of the fraudulent transaction[s] themselves were in the public

domain") (quoting *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir.

1994)).

27.    The allegations in the Adversary Complaint mirror the information included in the

public disclosures, and the news articles raise the same issue as the Adversary Complaint —was

the Agreement improperly obtained as a result of political influence?  This is more than sufficient

to satisfy the "quick trigger" articulated by *Cooper* and *Osheroff* and demonstrates that critical

elements of the transaction were in the public domain so as to "at least have alerted law-

enforcement authorities to the likelihood of wrongdoing" as discussed in *Ping Chen*.  966 F. Supp.

2d at 298 (quoting *Springfield*, 14 F.3d at 654).  In *Osheroff*, the court found that significant

overlap between the Plaintiff's allegations and the public disclosures is sufficient to show that the disclosed information is substantially similar to the allegations in the complaint.  In so finding, the court dismissed plaintiffs' argument that the disclosures were required to contain allegations of wrongdoing, finding that the statute only requires disclosures "of allegations *or transactions*." *Osheroff*, 776 F.3d at 814.  Quotes from the Florida Bulldog articles that are substantially the same as the allegations made in Plaintiff's Adversary Complaint include, without limitation, the following:

- February 22, 2016 Article (Ex. B):  "An oncology company financially connected to Gov. Rick Scott got a no-bid contract four years ago from taxpayer-supported Broward Health for as long as 25 years – an unprecedented term…. The North Broward Hospital District, Broward Health's legal name, is and was at the time run by an all-Republican board of commissioners appointed by the governor." *Compare* FAC ¶ 101.

- February 24, 2016 Article (Ex. C): "A cancer treatment company financially tied to Gov. Rick Scott that got a no-bid, 25-year contract from Broward Health in January 2012 later contributed nearly $400,000 to the governor's re-election campaign, state records show." *Compare* FAC ¶¶ 145-46.

- February 24, 2016 Article (Ex. C): "The contract spells out the terms of an exclusive and lengthy arrangement in which Broward Health gave 21st Century Oncology LLC exclusive rights to supply radiation oncology services to Broward Health's patients – and collect all the revenue those patients generate."  *Compare* FAC ¶¶ 8-9, 92-94, 106, 110.

- February 24, 2016 Article (Ex. C):  "21st Century paid Broward Health nothing to obtain that access. Likewise, Broward Health did not pay 21st Century to assume a practice area that then-Broward Health president and chief executive Frank Nask told the district's board of commissioners in 2012 was losing $3.5 million a year."  *Compare* FAC ¶¶ 38, 41, 72, 74.

- February 24, 2016 Article (Ex. C): "Why would 21st Century want to take over a money-losing operation? How might it turn it into a profit maker? Kevin Fusco, who holds Nask's job today, was asked by email to discuss the oncology radiation program's performance under 21st Century. He did not respond."  *Compare* FAC ¶ 72.

- February 24, 2016 Article (Ex. C):  "About a year later, the contract was amended to delete any reference to indigent patient fees. Broward Health's payment schedule for indigent services was changed to now pay the radiation company 65 percent of the Medicare Part B allowable. No explanation for the change, or its cost to the public health system, was given." *Compare* FAC ¶ 133.

- February 24, 2016 Article (Ex. C):  "Throughout all this time, 21st Century was a reliable contributor to Gov. Scott, who appoints Broward Health's governing Board of Commissioners."  *Compare* FAC ¶¶ 158, 254.

Most if not all of the material information in the Complaint that was not disclosed in the articles was disclosed in the January 30, 2012 Board minutes (Ex. E):

- "Commissioner David Di Pietro [the Relator] reviewed the minutes in detail.  He spoke to the discussion regarding the 21st Century Radiation Oncology Agreement and the terms of that agreement.  He also stated that Mr. Nask provided background information with regard to the prior radiation agreement with Dr. Agarwal and what position that left the District in financially – which was currently a loss."  *Compare* FAC ¶¶ 74, 82-83.

- "Commissioner McKee explained that he voted NO because he has a problem with the 10 year contract.  He said that 21st Century is a great company, but he questioned why it did not go out for a bid."  *Compare* FAC ¶ 163.

- "Commissioner Paul-Hus commented that with the previous agreement, Broward Health was losing $3.5 million until this service agreement was put in place."  *Compare* FAC ¶ 74.

- "Mr. Nask said . . . there was no requirement to do the RFP."  *Compare* FAC ¶ 83.

28.    In short, the allegations in the Adversary Complaint are substantially the same as the public disclosures in the Florida Bulldog articles and the January 30, 2012 Board minutes. Further, any additional information the Plaintiff may have had would have been disclosed in the public filings of Debtors or through the other public minutes of Broward, both of which identify this transaction.  The public disclosures were sufficient to put the federal government on notice of a potential fraud related to the same transaction at issue in the Adversary Complaint.  The articles raise the same issue as the allegations in the Adversary Complaint —namely, whether political influence and ties to Governor Scott resulted in an improper award of the Agreement to Debtors.

**2.    Plaintiff is not an original source.**

29.    Plaintiff is not an original source, nor does he allege he is one in the Adversary Complaint.  An original source is someone who has "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions."  31 U.S.C. § 3730(e)(4)(B)

13

(2012).   The Adversary Complaint states that "the facts supporting this action are based on Relator's personal knowledge, experience, communications, and investigation while serving as a Commissioner on the Broward Health Board."  FAC ¶ 25.  Plaintiff cannot, however, qualify as an original source unless he has knowledge that is ***independent of*** and ***materially adds*** to the public disclosures.[4]  Plaintiff does not meet this standard.

30.    Plaintiff attempts to obfuscate his inability to materially add to the public disclosures by spending the vast majority of the Adversary Complaint discussing matters internal to Broward, Nask, and a prior radiation oncology provider that are completely devoid of a connection to Debtors.  Plaintiff, at most, attempts to provide "background information that helps one understand or contextualize a public disclosure," and as held in *Osheroff*, that is insufficient to grant original source status.  *Osheroff*, 776 F.3d at 815.  Consistent with the public disclosures in *Osheroff*, the Florida Bulldog articles already gave rise to an inference that financial or other political contributions may have affected the awarding of the Agreement, and therefore Plaintiff cannot qualify as an original source.

31.    Moreover, in *Ping Chen*, this Court concluded that the Plaintiff did not qualify as an original source, stating that "for all its length, the Complaint primarily consists of repetitive allegations" and that "on the whole, the Complaint's allegations are 'not much different from the allegations or transactions of the public disclosures' and therefore cannot be said to materially add" to the public disclosures.  *Ping Chen*, 966 F. Supp. 2d at 300-301; *see also U.S. ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1079 (8th Cir. 2014) (holding that a plaintiff's information did not materially add to the public disclosures because the disclosures

---

[4]    Plaintiff also concedes in the Complaint that he "did not learn the truth about the [alleged] economics of the deal until the spring of 2016," FAC ¶ 192, which is after the public disclosures occurred.

14

already revealed "'the essential elements comprising that fraudulent transaction . . . so as to raise

a reasonable inference of fraud'") (quoting *U.S. ex rel. Rabushka v. Crane Co.*, 40 F.3d 1509, 1514

(8th Cir. 1994)).  Simply stated, while potentially adding some background information, the vast

majority of which is not related to the Debtors, the Adversary Complaint does not materially add

to the public disclosures, and as in *Ping Chen*, there is not much difference between the Adversary

Complaint and the publicly disclosed transactions.

32.     The public disclosure bar was intended to prevent opportunistic lawsuits by

plaintiffs who seek to profit from information disclosed to the world by others.  *See Cooper*, 19

F.3d at 565 (stating that the purpose of the original source doctrine is to "increase private citizen

involvement in exposing fraud . . . while preventing opportunistic suits by private persons who

heard of fraud but played no part in exposing it"); *Ping Chen*, 966 F. Supp. 2d at 295-96 ("Hence

the FCA's public disclosure provision, the purpose of which is 'to bar parasitic lawsuits' based

upon publicly disclosed information in which would-be relators 'seek remuneration although they

contributed nothing to the exposure of the fraud.'" (quoting *Kreindler*, 985 F.2d at 1157)).  The

Adversary Complaint brings exactly such a parasitic lawsuit.  Plaintiff *is quoted* in the February

22, 2016 article and described as being "stunned," Ex. B, and concedes in the Adversary Complaint

that he did not understand the economics of the deal until spring 2016.  Because Plaintiff is not an

original source, the Adversary Complaint fails to state a claim for a debt owed to a

governmental unit.

### B.     Plaintiff Has Not Plead With Particularity That The Alleged Debt Was Obtained By False Pretenses, False Representations, Or Actual Fraud.

33.     An alleged creditor claiming debt is non-dischargeable because it was obtained by

false pretenses, false representations, or actual fraud must plead the underlying facts with

particularity.  *See, e.g.*, *In re Howard*, No. 09-22557RDD, 2009 WL 4544392, at *4 (Bankr.

S.D.N.Y. Nov. 25, 2009) (dismissing non-dischargeability claim under 11 U.S.C. § 523(a)(2)(A)

because the "barebones and conclusory" facts alleged in the complaint failed to satisfy the Rule

9(b) particularity requirement); *In re Schulman*, 196 B.R. 688, 695 (Bankr. S.D.N.Y. 1996)

(granting motion to dismiss non-dischargeability claims under 11 U.S.C. § 523(a)(2)(A) because

the plaintiff "fail[ed] to plead any particular facts which would give rise to an inference of

fraudulent intent"); *In re Colodner*, 147 B.R. 90, 95 (Bankr. S.D.N.Y. 1992) (conditionally

granting motion to dismiss complaint under 11 U.S.C. § 523(a)(2)(A) because the "complaint

fail[ed] to particularize the fraud claims as to time, place, speaker and specific statements allegedly

made"); *In re Overmyer*, 32 B.R. 597, 604 (Bankr. S.D.N.Y. 1983) (granting motion to dismiss

several claims that "fail[ed] to plead specific facts establishing fraud as a basis for

nondischargeability under Code § 523(a)"); *see also In re Wong*, 291 B.R. 266, 280 (Bankr.

S.D.N.Y. 2003) (dismissing claim for non-dischargeability under 11 U.S.C. § 523(a)(4) because

the complaint "failed to plead the Debtor's fraudulent intent with the specificity required by . . .

Rule 9(b)"); *In re Demas*, 150 B.R. 323, 328 (Bankr. S.D.N.Y. 1993) (dismissing claims for non-

dischargeability under other discharge exceptions based on fraud because the plaintiff failed to

"specify the time, place, the content of any allegedly fraudulent representation, the facts

misrepresented, the identity of the perpetrator and the consequences of the fraud").

34.     Plaintiff claims the alleged debt at issue was obtained fraudulently because 21st

Century certified compliance with the AKS when seeking payment from federal programs for

treating patients affiliated with Broward.  Plaintiff alleges the certification was false because Rubin

offered a kickback to Nask in the form of political protection in exchange for Nask's support for

the contract between Broward and 21st Century.  But despite bald assertions that the Debtors

orchestrated kickbacks, the Complaint lacks any specificity as to the what, when, where, and how

Debtors had **any** knowledge or nexus to any alleged improper remuneration.  For all of its length, the Adversary Complaint only includes two conclusory statements, FAC ¶¶ 141, 145, as to Debtors' nexus to the allegations, each of which is woefully inadequate to meet Rule 9(b) requirements.  Those allegations are buried in the middle of a lengthy Adversary Complaint replete with information and details related to behavior and actions by Broward and its former Chief Executive Officer, Frank Nask, that are devoid of any connection to the Debtors.  The Adversary Complaint merely states that Debtors paid a lobbyist to approach Nask with a "proposal," *id.* ¶ 141, and later simply asserts that the lobbyist was hired "to make this deal" and that executives at Debtors were "fully aware and complicit," *id.* ¶ 145.  These conclusory statements do not survive Rule 9(b) pleading requirements for an allegation asserting non-dischargeability due to fraud.  *See CPF Premium Funding, Inc. v. Ferrarini*, No. 95 CIV. 4621 (CSH), 1997 WL 158361, at *1 (S.D.N.Y. Apr. 3, 1997) (granting motion to dismiss where plaintiffs "[said] nothing about the nature of [Defendant's] individual conduct" and merely "point[ed] to conclusory sections of the complaint which accuse '[Defendant] and others' of engaging in schemes to defraud."); *In re Howard*, 2009 WL 4544392, at *4 (conclusory allegations that defendant had knowledge of fraud insufficient to survive motion to dismiss).

35.    Furthermore, the remuneration alleged in the Adversary Complaint —purported political protection provided to Nask in the form of controlling appointments to the Board (which had the independent power to approve or reject the Agreement), FAC ¶ 71, by an independent contractor lobbyist (when the Governor holds that authority), *id.* ¶ 157—does not meet the plausibility standard under Rule 8, much less the requirements under Rule 9(b) to state plausible allegations creating a strong inference that specific false claims were submitted to the government.

36.     At its core, Plaintiff's allegation is that an alleged independent contractor of the Debtors with no governmental status or authority purported to offer *political* protection to Nask in exchange for his support of the Agreement, and that the Debtors were somehow aware and complicit in this protection which amounted to fraud.  The Adversary Complaint fails, however, to provide any specificity at all regarding any involvement by the actual defendants in this case— the Debtors.  The only statements included in the Adversary Complaint attempting to tie the Debtors to the allegations are as follows:  "21st Century paid a lobbyist named Bill Rubin to approach Nask with a 'proposal,'" FAC ¶ 141, and "Executives at 21st Century hired and paid Rubin to make this deal . . . executives at 21st Century were fully aware and complicit to this kickback scheme," FAC ¶ 145.  There is no what, when, where, or how the Debtors were involved in the "deal" or "proposal," and even the Adversary Complaint places air quotes around the word "proposal."  *See U.S. ex rel. Vallejo v. Investronica, Inc*., 2 F. Supp. 2d 330, 336 (W.D.N.Y. 1998) (dismissing complaint where plaintiff identified only the "general substance of these allegedly false statements" and and failed to "allege the date or dates on which [the allegedly false] statements were made").  Plaintiff provides ***no*** evidence to support these conclusory statements, nor does he plead that Rubin had any actual or apparent authority to act on the Debtors' behalf.  Nor could he, as any purported illegal acts would not be within the authority of an independent contractor.[5]  This cannot survive under Rule 9(b).[6]

---

[5]     A principal may be liable for the acts of its agent only if such acts are within the scope of the agent's actual or apparent authority.  See *U.S. v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 660 (2d Cir. 1989).  Actual authority is defined as "the kind of work [the agent] is employed to perform, occurs within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master."  *U.S. v. Incorporated Village of Island Park*, 888 F. Supp. 419, 437 (E.D.N.Y 1995) (quoting W. Prosser, Torts § 70 at 461 (4th ed. 1971)).  Apparent authority is defined as "the authority which outsiders would normally assume the agent to have, judging from his position with the corporation and the circumstances of his conduct."  *Id.*; *see also U.S. v. Bi-Co Pavers, Inc.*, 741 F.2d 730, 741 (5th Cir. 1984).  Neither is present here.

[6]     The Adversary Complaint also references statements by Debtors' former CEO and President, Dr. Daniel Dosoretz, regarding contributions Debtors were planning on making to Governor Scott's campaign.  Once again, the

18

37.     Moreover, the Adversary Complaint also fails to state a claim as to any alleged improper remuneration at all and is certainly devoid of Rule 9(b) specificity.  It offers the following two paragraphs as to events prior to September 19, 2011, the effective date of the Agreement:

- "In the summer of 2011, Rubin approached Nask on behalf of his client, 21st Century.  Rubin told Nask that he controlled the appointments to the Broward Health Board and he urged Nask to award a lengthy exclusive contract for radiation oncology services to 21st Century.  In exchange, Rubin promised Nask that the appointments to the Broward Health Board would protect Nask's continuing employment, salary, and pension as CEO."  FAC ¶ 142.

- "Rubin also communicated the message to Nask that if he did not support the contract with 21st Century, then the appointments to the Board would not be his allies and his employment would be terminated."  FAC ¶ 143.

38.     But a motion to dismiss a claim that fraudulently-obtained debt is non-dischargeable will be granted where the complaint fails "to particularize the fraud claims as to time, place, speaker and specific statements allegedly made."  *In re Colodner*, 147 B.R. at 95.  These allegations also fail the *Twombly* plausibility standard.  550 U.S. at 570.  The Adversary Complaint asserts that an independent contractor offered political protection and stated that he controlled Board appointments (when the Governor holds that authority) and that the Chief Executive Officer agreed to support the Agreement in exchange (when a seven member Board— not including Nask—controlled the decision to award the Agreement).[7]  FAC ¶¶ 54, 163.  The Adversary Complaint accordingly fails to state a claim for relief under Rule 12(b)(6) and Rule 9(b), and should be dismissed with prejudice.

39.     Not only has Plaintiff not identified any specific false claims, the allegations in the Adversary Complaint are "devoid of all but general assertions" of fraud.  *In re Kanaley*, 241 B.R.

---

Adversary Complaint does not include any facts regarding why such campaign contributions would be improper, nor could it.

[7]     Moreover, as referenced above, any alleged illegal action would not be within an agent's actual authority, nor would it be within his apparent authority for Rubin to promise control over the appointment of individuals to the Board, a power reserved to Governor Scott.

at 803.  First, Plaintiff fails to allege that Rubin's purported actions caused Governor Scott to provide Nask with political protection, or affected the Governor's judgment in selecting Board commissioners, or caused the Board to approve the Agreement.  *See U.S. ex rel. King v. Solvay Pharmaceuticals, Inc.*, 871 F.3d 318, 330 (5th Cir. 2017) (holding that plaintiffs failed to establish causation between the defendant's lobbying activity and the subsequent decision of a state pharmaceutical and therapeutic committee to place the defendant's drug on a preferred drug list). Indeed, Nask did not have the ability to unilaterally approve the Agreement with 21st Century LLC, nor did Rubin have the power to appoint members to the Board.  FAC ¶ 54.  These powers were exclusively held, respectively, by the Board, which approved the Agreement by a 6-1 vote, *id.* ¶ 163, and Governor Scott, who controlled all appointments to the Board, *id.* ¶¶ 11, 169.

40.    Moreover, courts have held that the government cannot recover under the FCA, even if a defendant offered to bribe a government official if no causal link exists between the formation of the contract and the fraud.  *See U.S. v. Kellogg Brown & Root Services, Inc.*, 99 Fed. Cl. 488, 513 (2011) (concluding that an FCA claim is not based on "taint" from a kickback alone, that the relevant issue is "whether the contract was formed as a result of the fraud," and ruling that "[m]erely alleging a conflict of interest created by the kickback, without more, is not sufficient to state a claim under the FCA"); *U.S. v. Shaw*, 725 F. Supp. 896, 900 (S.D. Miss. 1989) ("The bare fact that bribes were involved in this case, a fact established conclusively by the prior criminal proceeding, does not necessarily lead to the further conclusion that false or fraudulent claims were made . . . .").  The Adversary Complaint at most alleges that an independent contractor lobbyist attempted to influence Nask's support of the Agreement.  It does not, however, plead any facts supporting that the Board's decision was impacted in any manner.[8]

---

[8]    Assuming *arguendo* that the allegations in the Adversary Complaint are sufficient to allege a violation of the AKS, those same allegations—that Rubin controlled Board appointments, that Rubin met with Plaintiff in August

41.     Because Plaintiff has not pled fraud with particularity, the Adversary Complaint should be dismissed for failure to state a claim that the debt Debtors allegedly owe is non-dischargeable.

**C.      The Complaint Otherwise Fails to State a Claim That the Alleged Debt is Dischargeable Under § 1141(d)(6)**

42.     Plaintiff also fails to state a claim because the Agreement itself was structured to meet the elements of the personal services contract safe harbor, and therefore cannot violate the federal AKS.  Safe harbors were "designed to specify various payment and business practices which, although potentially capable of inducing referrals of business under the Federal and State health care programs, would not be treated as criminal offenses under the anti-kickback statute." 64 Fed. Reg. 63518 (Nov. 19, 1999).  The Government has further stated in commentary that "[i]f a person participates in an arrangement that fully complies with a given provision [safe harbor], he or she will be assured of not being prosecuted criminally or civilly for the arrangement that is the subject of that provision" and "[i]f an individual or entity engages in a business arrangement that is the subject of a safe harbor provision and complies with all of its provisions, that individual will be assured that he or she will not be prosecuted."  56 Fed. Reg. 35952 (July 29, 1991).

43.     The personal services contract safe harbor sets forth the following requirements:

     i.      The agency agreement[9] is set out in writing and signed by the parties.

---

2011 and asked him to support the Agreement, and that Plaintiff was later appointed to the Board and voted to approve the Agreement—show that Plaintiff himself also violated the AKS.  Florida Compl. ¶¶ 145-46, 151-52. If Plaintiff is guilty of the criminal activity that is at issue in a *qui tam* action, he must be dismissed from the action.  *See U.S. ex rel. Schroeder v. CH2M Hill*, 793 F.3d 1080 (9th Cir. 2015) (reading Section 3730(d)(3) to require dismissal of all relators convicted of criminal conduct arising from the fraudulent conduct at issue in the *qui tam* suit, even a minor participant who neither planned nor initiated the fraudulent scheme).

[9]   "An agent of a principal is any person, other than a bona fide employee of principal, who has an agreement to perform services for, or on behalf of, the principal.  42 C.F.R. § 1001.952(d).

ii.      The agency agreement covers all of the services the agent provides to the principal for the term of the agreement and specifies the services to be provided by the agent.

iii.     If the agency agreement is intended to provide for the services of the agent on a periodic, sporadic or part-time basis, rather than on a full-time basis for the term of the agreement, the agreement specifies exactly the schedule of such intervals, their precise length, and the exact charge for such intervals.

iv.      The term of the agreement is for not less than one year.

v.       The aggregate compensation paid to the agent over the term of the agreement is set in advance, is consistent with fair market value in arms-length transactions and is not determined in a manner that takes into account the volume or value of any referrals or business otherwise generated between the parties for which payment may be made in whole or in part under Medicare, Medicaid, or other Federal health care programs.

vi.      The services performed under the agreement do not involve the counseling or promotion of a business arrangement or other activity that violates a State or Federal law.

vii.     The aggregate services contracted for do not exceed those which are reasonably necessary to accomplish the commercially reasonable business purpose of the services.

42 C.F.R. § 1001.952(d).   The Agreement satisfies these requirements, and the Adversary Complaint does not allege that these requirements were not met.   The Agreement is a writing

22

signed by both 21st Century LLC and Broward, and it sets forth the services provided by 21st Century LLC to Broward.  The initial term is for 10 years, and the compensation is set in advance, fair market value, and was not determined in a manner that takes into account the volume or value of referrals between the parties.  As the Agreement fits within the personal services agreement safe harbor, the Debtors are protected from enforcement under the AKS as to the Agreement.

44.    Finally, the Adversary Complaint simply and improperly reframes an anti-lobbying issue as an AKS issue.  The lobbying activity that Plaintiff alleges is a violation of the AKS is controlled by an entirely separate statutory framework.  *See* 2 U.S.C. § 1601 et. seq.; Fla. Stat. Ann. § 11.045.  States and the federal government have structured an independent set of laws that provide the boundaries for political lobbying, and any issues relating to such activity are covered by that specific framework rather than by the AKS.  *See Radzanower v. Touch Ross and Co.*, 426 U.S. 148, 153 (1976) ("It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum."); *Morton v. Mancari*, 417 U.S. 535, 550-551 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.").

## CONCLUSION

45.    For the foregoing reasons, Debtors respectfully request that the Court grant their motion to dismiss the Adversary Complaint.

New York, New York                By:  */s/ Christopher Marcus*
Dated: November 3, 2017                Christopher Marcus, P.C.
                                       John T. Weber
                                       KIRKLAND & ELLIS LLP
                                       KIRKLAND & ELLIS INTERNATIONAL
                                       601 Lexington Avenue
                                       New York, New York 10022
                                       Telephone:    (212) 446-4800
                                       Facsimile:    (212) 446-4900

                                       James H.M. Sprayregen, P.C.
                                       Michael B. Slade (admitted pro hac vice)
                                       Alexandra Schwarzman (admitted pro hac vice)
                                       KIRKLAND & ELLIS LLP
                                       KIRKLAND & ELLIS INTERNATIONAL
                                       300 North LaSalle Street
                                       Chicago, Illinois 60654
                                       Telephone:    (312) 862-2000
                                       Facsimile:    (312) 862-2200

                                       *Counsel for Debtors and Debtors in Possession*

24